IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHAWN M. BERILA, | CASE NO. 3:21-cv-2183 |
| Petitioner, | DISTRICT JUDGE JOHN R. ADAMS |
| vs. | |
| WARDEN JAMES CRAIG,[1] | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Pro se Petitioner Shawn Berila filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Berila is in custody at the North Central Correctional Complex due to a journal entry of sentence in the case *State v. Berila*, Medina County Court of Common Pleas, Case No. 17CR939. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that

---

[1]     The name of the Warden at the North Central Correctional Complex is Tom Watson. Doc. 6, at 1 n.1. So Watson is the proper Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Ninth Appellate District summarized the facts underlying Berila's conviction as follows:

> {¶2} When the victim ("J.S.") was only seven years old, Mr. Berila married her mother, and the family of three soon moved from a trailer into a house in Seville. By all accounts, Mr. Berila was a very strict disciplinarian through the years as J.S.' step-father. For instance, J.S. would be grounded for months at a time, she was not allowed to get a driver's license until she turned eighteen, and she was not allowed to have a boyfriend.

> {¶3} According to J.S., when she was eleven years old, Mr. Berila began sexually abusing her over the span of a decade, from 2003 to 2013. The first incident occurred sometime in the fall of 2003. Mr. Berila was taking a bath while J.S.' mother was at work, and he summoned J.S. to bring him a drink. After she put his can of Pepsi on the bathroom sink, Mr. Berila called her over to the bathtub, grabbed her by the hand, forced her hand onto his penis, and told her to grab it. J.S. testified that Mr. Berila began molesting her frequently from that moment on, usually while her mother was at work. He would call her to his bedroom after she got home from school, where he would lay on his bed and make her give him "hand jobs" or "blow jobs" until he ejaculated. Sometimes he would either remove her clothes or have her take off her own clothes, and she felt she had no choice but to comply. The sexual abuse progressed through the years and Mr. Berila began having vaginal intercourse with J.S. when she was sixteen years old. He would put her on his bed and force himself inside of her while holding her down. She sometimes tried to resist and sometimes cried, but he was much stronger and she realized her efforts were futile. It became such a normal routine for J.S. that when Mr. Berila would tell her to go to

his bedroom she would sometimes just take off her clothes while waiting for him because she "knew it was going to happen anyway * * *." J.S. never told anyone because Mr. Berila showed her his gun and threatened to "kill [them] all if [she] told anybody." Mr. Berila admitted he bought a gun for protection in the event his father showed up at the house. Mr. Berila's father was being released after serving a lengthy prison term for sexually abusing Mr. Berila's sister and attempting to sexually abuse Mr. Berila's brother sometime in the 1970's.

{¶4} According to J.S., Mr. Berila impregnated her when she was nineteen years old, but they told her mother that the father of the child was a random guy at a party. Her parents insisted that she get an abortion against her wishes, although at trial Mr. Berila claimed to have actually opposed the abortion. J.S. recalled that the sexual assaults continued after the abortion, albeit not as often. When she was hospitalized following threats of suicide, her mother recalled Mr. Berila being there "every possible second" for visiting hours. A doctor noted in J.S.' medical records that during his interview with her, Mr. Berila was overly concerned, talked over J.S., and overtook the interview. Her mother recalled Mr. Berila being "pissed" at one point when a nurse admonished him for climbing into the hospital bed with J.S. and placing his arm around her, which incident was also noted by the nurse in J.S.' medical records.

{¶5} During a family vacation to Cancun, Mexico, in 2014, the family had two queen-sized beds in their hotel room, yet Mr. Berila decided to sleep in J.S.' bed with her for several nights, although the actual number of nights was disputed. He claimed there was no room in the other bed, as he wanted to give her sunburnt mother some space. J.S. recalled Mr. Berila telling her he felt like they were in a relationship, but at trial he denied making this remark. Her mother recalled that Mr. Berila would take many pictures of J.S. and would position himself close to her in the pictures.

3

{¶6} In late 2014, J.S. moved out of the family house. According to her mother, Mr. Berila was very upset and heartbroken when J.S. moved out, and "he said it was like she had broke (sic) up with him." Mr. Berila admitted being emotionally distraught at the time, but only recalled saying "it was like losing [their] daughter" or "like she was leaving [them]." The mother claimed Mr. Berila was so upset that he attempted suicide by taking several Vicodin pills. Mr. Berila denied attempting suicide, but conceded he may have taken Vicodin for neck pain. J.S. met and began dating a boyfriend ("A.S.") sometime that same year. She recalled revealing the sexual abuse to A.S. in 2015, which he corroborated at trial, but she refused his advice to tell her mother because she was still scared and not ready to tell her. When she began to miss her mother and later asked about returning home to live, her mother said yes, but Mr. Berila said no. J.S.' mother divorced Mr. Berila sometime thereafter and moved into her own apartment.

{¶7} Sometime in 2016, J.S. broke up with A.S. and met a new boyfriend ("J.H."). After J.H. decided to move to Florida, J.S. attempted suicide by ingesting five ibuprofen pills and seven Advil pills and making superficial cuts to her left wrist. She was hospitalized again and revealed to staff that Mr. Berila not only sexually abused her, but was also the father of her aborted child. Afterward, she made eleven visits to a counselor and revealed the sexual abuse to her as well.

{¶8} In early 2017, when J.S. was twenty-four years old, she texted her grandmother and revealed Mr. Berila's sexual abuse. The police were soon contacted and they launched an investigation. The police had J.S. send some "controlled texts" to Mr. Berila asking to talk with him, but Mr. Berila refused to talk to J.S. via text or over the phone. He texted back that he would only agree to meet with her in person. The police never set up an actual meeting, however, once they learned J.S.' mother

4

had revealed her daughter's sexual abuse allegations to a co-worker. Two officers then went to Mr. Berila's home and told him they had some questions about his step-daughter. According to Officer Joshua Thompson, Mr. Berila seemed nervous and surprised, and he told them he would prefer to talk with them at the nearby police station. Although the police station was not even one mile away, Officer Thompson recalled that Mr. Berila showed up thirty minutes later, appeared "real (sic) shaken up," and smelled strongly of cigarettes, as if he had smoked an entire pack. Mr. Berila explained that he called his brother and his attorney during that time.

{¶9} Mr. Berila was indicted on one count of gross sexual imposition ("GSI") in violation of R.C. 2907.05(A)(4), six counts of rape in violation of R.C. 2907.02(A)(1)(b), and twenty-four counts of rape in violation of R.C. 2907.02(A)(2).

{¶10} Many months later, but prior to trial, J.S. remembered that Mr. Berila, who had a hobby of photography, had taken nude pictures of her at some point. She informed the prosecutor, and the police obtained a search warrant for Mr. Berila's home. When they arrived at his home to execute the warrant, Officer Thompson recalled that Mr. Berila no longer appeared nervous, but seemed rather "cocky" instead. No illicit pictures of J.S. were ultimately discovered in the house. However, police located keyboards and monitors that presumably went to two unaccounted-for desktop computers. Mr. Berila admitted at trial that, while remodeling the home sometime prior to the execution of the search warrant, he threw out two desktop computers that had been in the house for years; one of which was his personal "gaming" computer.

*State v. Berila*, No. 19CA0007-M, 2020 WL 3542182, at *1–2 (Ohio Ct. App. June 30, 2020).

5

**Procedural background**

*Trial court proceedings*

In October 2017, the Medina County Grand Jury issued an indictment charging Berila with one count of gross sexual imposition (count 1); six counts of rape of a victim less than 13 years old (counts 2–7); and 24 counts of rape (counts 8–31). Doc. 6-1, at 4–15 (Exhibit 1). Berila was appointed counsel and pleaded not guilty to the charges. *Id*. at 16 (Exhibit 2). Berila requested discovery and a bill of particulars, *id*. at 17 (Exhibit 3), and the State provided responses, *id*. at 20 (Exhibit 4).

The case proceeded to trial. The jury found Berila guilty on all of the counts, including a special finding that Berila used force in the six counts related to rape of a victim less than 13 years old. Doc. 6-1, at 23–24 (Exhibit 5). The trial court sentenced Berila to four years in prison for count 1, life in prison with parole eligibility after ten years for each of counts 2 through 7, and nine years in prison for each of counts 8 through 31. *Id*. at 26 (Exhibit 6). The court ordered counts 2 through 7 to run concurrently with each other, but consecutive to the other sentences; counts 8 through 25 to run concurrently with each other, but consecutive to the other sentences; and counts 26 through 31 to run concurrently with each other, but consecutive to the other sentences, for a total of 32 years to life in prison. *Id*.

6

*Direct appeal*

Berila, through new counsel, timely appealed to the Ohio court of appeals. Doc. 6-1, at 28 (Exhibit 7). In his merits brief, he raised the following assignments of error:

> 1. The evidence was insufficient to support the jury verdicts of guilty.
>
> 2. Appellant's convictions were against the manifest weight of the evidence.
>
> 3. The trial court erred when it sentenced appellant to consecutive prison terms when clearly and convincingly the record failed to support its findings.
>
> 4. Defendant-appellant's trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.
>
> 5. The State of Ohio committed prosecutorial misconduct by withholding exculpatory evidence. Said misconduct constituted plain error.

Doc. 6-1, at 33 (Exhibit 8). On June 30, 2020, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 89–108.

In August 2020, Berila filed a pro se notice of appeal with the Ohio Supreme Court. Doc. 6-1, at 110 (Exhibit 11). In his memorandum in support of jurisdiction, Berila raised the same five issues that he raised to the Ohio court of appeals. *Id*. at 116–19. In October 2020, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Berila's appeal. *Id*. at 161 (Exhibit 14).

*Motion for leave to file an Ohio Appellate Rule 26(B) Application to reopen*

In October 2020, Berila filed in the Ohio court of appeals a motion for leave to file an application under Ohio Appellate Rule 26(B) to reopen his direct appeal. Doc. 6-1, at 162 (Exhibit 15). Berila explained that he sent an application to reopen to the wrong court and didn't learn about this mistake until the clerk of court returned the unfiled application to him after the required filing date. *Id.* at 163. Berila also filed on the same day his application to reopen his direct appeal. *Id.* at 169 (Exhibit 16). He alleged ineffective assistance of appellate counsel for failing to raise on appeal the following assignments of error:

> 1. The Appellants Due Process and Effective Assistance of Counsel rights were violated under the Sixth and Fourteenth Amendment of the United States Constitution when trial counsel failed to investigate in petit jury array[2]
>
> 2. The Appellant's due process and Effective Assistance of Counsel rights were violated under the Sixth and Fourteenth Amendments of the United States Constitution due to Judicial Misconduct and Judicial Errors.
>
> 3. The Appellant's Due Process and Effective Assistance of Counsel rights were violated under the Sixth and Fourteenth Amendments of the United States Constitution due to jury misconduct and errors.
>
> 4. The Appellant's Due Process and Effective Assistance of Counsel rights were violated under the Sixth and Fourteenth Amendments of the United

---

[2]     Berila's grounds for relief are reproduced as written.

> States Constitution due to Prosecutorial Misconduct and errors.
>
> 5. The Appellant's Due Process and Effective Assistance of Counsel rights were violated under the Sixth and Fourteenth Amendments of the United States Constitution due to defense counsel and appellate counsel misconduct and errors.

Doc. 6-1, at 171–74. On February 1, 2021, the Ohio court of appeals denied Berila's motion for leave and his application, finding that Berila failed to show good cause for his untimely filing. *Id.* at 194–95 (Exhibit 19). On March 8, 2021, Berila moved for leave to file a motion for reconsideration, *id.* at 196 (Exhibit 20), but the court denied this motion in May 2021, *id.* at 231–32 (Exhibit 22). The court explained that Berila's motion for reconsideration was itself untimely, and Berila failed to show extraordinary circumstances for the delay. *Id.*

In March 2021, Berila appealed to the Ohio Supreme Court. Doc. 6-1, at 234 (Exhibit 23). In his memorandum in support of jurisdiction, he set forth the following propositions of law:

> 1. The Appellant was deprived of his right to effective assistance of counsel in contravention to the Sixth Amendment of the United States Constitution, and Article I, Section 10 of the Ohio Constitution.
>
> 2. The Appellant right to Due Process and Effective Assistance of counsel were violated under the Sixth and Fourteenth Amendment of the United States Constitution when trial counsel failed to investigate Petit jury array.

3. The Appellant right to Due Process and Effective Assistance of counsel were violated under the Sixth and Fourteenth Amendment of the United States Constitution due to Judicial Misconduct and Judicial Errors.

4. The Appellant right to Due Process and Effective Assistance of counsel were violated under the Sixth and Fourteenth Amendment of the United States Constitution due to jury misconduct and errors.

5. The Appellant right to Due Process and Effective Assistance of counsel were violated under the Sixth and Fourteenth Amendment of the United States Constitution due to defense counsel and appellate counsels misconduct and errors.

Doc. 6-1, at 237 (Exhibit 24). In May 2021, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Berila's appeal. *Id*. at 285 (Exhibit 26).

*Federal habeas corpus petition*

On October 15, 2021, Berila filed a federal habeas corpus petition under 28 U.S.C. § 2254.[3] Doc. 1. In January 2022, he filed an Amended Petition. Doc. 3. He raised the following grounds for relief:

**Ground one**: The evidence was insufficient to support the jury verdicts of guilty.

*Supporting facts*: The Courts ignored conflicting testimonies while also ignoring testimonies that contradicted statements made to the police. Which were used to the jury for indictment and in the trial. Jury was impacted due to such.

---

[3] A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988). Berila states that he placed his Petition in the prison mailing system on October 15, 2021. Doc. 1, at 19.

**Ground two**: Appellant's convictions were against the manifest weight of evidence.

*Supporting facts*: In addition to conflicting statements vs. testimonies, the prosecution lied to the jury repeatedly stating the drives that were taken during the police search warrant were completely empty when they had over 300k files (estimated). The prosecution also refused to give the defense the drives and computer. So they were unable to use at the trial for our defense. There were no evidence of any crime. There was no witnesses to any crime. There was no DNA. And the state's accuser was a mental patient.

**Ground three**: The trial court erred when it sentenced the defendant to consecutive prison terms when the record clearly and convincingly failed to support its findings.

*Supporting facts*: The court ignored the clear and convincing evidence and/or lack of evidence when passing the sentence. The judge and prosecution both inferred that a max sentence would be imposed if the 8, 3 or 1 year deal was not taken and it proceeded to trial. The defendant was a productive member of society with only a ticket in 20 years.

**Ground four**: Trial and Appellant's counsel provided ineffective counsel in violation of the Sixth Amendment to the United States Constitution.

*Supporting facts*: The lawyers failed to act as requested during the trial and in the appeal. Ignoring use of evidence and witness. Improper filings and failing to review before filing of motions and or Appeal. Both failed to work as directed with the trial lawyer refusing to act at all for long periods of time. Appellate lawyer also did the same, even as far as letting a pre-law person work and likely file without review.

11

**Ground five**: The Appellant's Due Process and
Effective Assistance of Counsel rights were violated
under the Sixth and Fourteenth amendments to the
United States Constitution when the trial counsel
failed to investigate in petit jury array.

*Supporting facts*: The Appellant is male and
the alleged victim is female. When the jury was
brought into the courtroom, the vast majority of the
jury pool were females in the community. This was
the second pool after the first pool was a majority of
males, was dismissed at the request of the
prosecution…

**Ground six**: The Appellant's Due Process and
Assistance of counsel rights were violated under the
Sixth and Fourteenth Amendments of the United
States Constitution due to Judicial Misconduct and
Judicial Errors.

*Supporting facts*: First, the trial judge, no
fewer than six times told the defense counsel to
hurry up or speed up ... his actions, questions, or
defense. Second, the trial judge cut short the defense
counsels closing arguments to the jury so the
prosecution could present its rebuttal ... Third, the
trial judge often berated the defense counsel in front
of the jury and once they were excused ... Fourth, the
trial judge and prosecution answered questions from
the jury without the presence of the defense counsel
... Fifth, the trial judge told the jury they were
staying until they came to a unanimous decision ....
Sixth, there was an active separation of witnesses
.... Ninth,[4] the trial judge and defense counsel both
handled the foreclosure case of the defendant's home
which was a clear conflict of interest …. Tenth, the
trial judge refused objections by the defense when
two jurors informed the judge that they visited the
alleged victim's mothers place of employment as
customers and knew who she was …. Eleventh, the
trial judge would not excuse another juror who told

---

[4]     Berila's supporting facts contain some duplicative allegations, which I
have omitted from this recitation for convenience.

the court [that she knew one of the witnesses] ….
Twelfth, the trial judge let her opinion and beliefs on
abortion affect her sentencing.

**Ground seven**: The Appellant's Due Process and
Effective Assistance of counsel rights were violated
under the Sixth and Fourteenth Amendments of the
United States Constitution due to jury misconduct
and errors.

*Supporting facts*: First, the jury had a total of
three active jurors admit and notify the court to
knowing the State's witnesses. Second, the jury had
requested to have questions answered while in
deliberations. The jury accepted answers from both
the judge and prosecution without the defense
present at all. Third, the jury pool was not fairly
represented in accordance with the petit jury array
causing bias and an unfair trial. Fourth, Allen
charge, the defense, the prosecution, and the judge
were all aware of the being hung at a 9 to 3 count
after late deliberations. Fifth, the jury ignored their
instructions allowing for a hung jury after being told
they had to come to an unanimous decision. The jury
misconduct and errors clearly constitutes an
unfairness and bias that deprived a fair trial.

**Ground eight**: The Appellant's Due Process and
Effective Assistance of counsel rights were violated
under the Sixth and Fourteenth amendments of the
United States Constitution due to Prosecutorial
Misconduct and errors.

*Supporting facts*: First, the prosecution
answered questions to the jury who were in
deliberations without any part of the defense
present. Second, allowed a State's witness to give
perjured testimony that conflicted with the witness
own sworn testimony/statements to police. Third,
the prosecution withheld evidence and discovery
from the defense. These were BCI reports, digital
files, drives and all items relevantly used by BCI
from the search warrant. None was ever given to the
defense even though it was requested several times

13

and several more in the weeks before the trial. Fourth, in an attempt to hide the fact of withholding evidence and disclosure, the prosecution had the police department, with no proof, testify they had the officer call the defendant directly in regards to the items taken, investigated, along with the finding report. Three days before the trial. Ignoring the fact the defendant had legal counsel and they were aware all contact to go through him. Fifth, the prosecution misled and lied to the jury often stating the drives and equipment were empty and there was absolutely nothing on them. When the defendant's family finally procured the stand alone drives, there were over 30k photos and file that the defense could have used to disprove or argue many of the Prosecution's case. Photo that could have shown details and factual evidence to disprove much of points driven to jury to give the jury the impression the prosecution wanted. To the state, the police have failed to return items that were cleared by BCI of any evidence or wrongdoing. Sixth, the prosecution falsely used the clear BCI reports to influence guilt onto the defendant for the jury, when the State's own BCI found nothing that implied guilt or could be used as evidence. These prosecutorial errors clearly constitutes unfairness, plain error, and a violation of Brady rule in regards to evidence withheld that clearly conflicted and dismissed the Prosecution argued at trial.

**Ground nine**: The Appellant's Due Process and Effective Assistance of Counsel Rights were violated under the Sixth and Fourteenth amendments of the United States Constitution due to defense and Appellate counsel misconduct and errors.

*Supporting facts*: First, the trial attorney that was first retained for by the defendant for $5000.00 dropped the defendant when the defendant was arrested after the indictment after being retained for a long period of time, when his daughter was given a prosecuting attorney position. Second, the trial attorney went against the defendant's wishes, and sided with the prosecution to gain favor, and

14

dismissed a male heavy jury pool. Third, the trial lawyer stated the remainder of the transferred retainer would be used on an investigator and to obtain expert witnesses, which counsel never done. Fourth, at no point did the defense counsel advise the defendant's right to claim indigence, which would allow the defense to request investigators, specialist, and expert witnesses. Fifth, the trial attorney refused to use neighbor's in Defense list of a vast majority of the witnesses the defendant wanted to use against the State. Sixth, the trial lawyer stated before trial he wanted to put a lien on Appellant's home, which he insisted he could handle with the trial judge. Later told family he couldn't pay for investigators, experts, and such trying to get more money as the Appellant was running out. Seventh, trial counsel stated the lien had to be done right after sentencing before the appeals attorney could take over. Trial counsel tried overpricing the lien four times. Use the Appellate attorney he had the judge assigned as a witness to the lien. Eighth, trial counsel never used and/or obtained the defendant's medical records from the Cleveland Clinic stating that he has multiple sclerosis or from Medina hospital about spots on the defendant's brain. The prosecution referred to the defendant as a liar and a hypochondriac .... Thirteenth, trial counsel acted in his own interest after the conviction, change the locks on the house in foreclosure .... Fourteenth, trial counsel refused to challenge the State's witness. Counsel ignored the altered states of the witnesses and never called into account the slurred speech and delayed reactions … because "he didn't want to be mean" …. Sixteenth, appellate counsel met with the defendant briefly to inform him it would take months to receive transcripts … Appellant still has not received a copy of those transcripts. Seventeenth, Appellate counsel agreed to allow the defendant an active role in the appeal process at the meeting, then only answered the phone several times over the next year and a half. Eighteenth, Appellate counsel ignored the appellant's direct request not to file the appellate brief without allowing the defendant to review the

15

> brief .... Nineteenth, Appellant requested several specific claims to be included in the appeal. None were reviewed or added .... The Appellant has never seen what was filed. Twentieth, Appellate counsel filed many extensions while admitting in the few calls he wasn't working on it at all yet. Twenty-first, Appellate counsel never used the BCI reports or the files on the drives in the appeal as he stated he would. Counsel still has not advised if they obtained the BCI reports...

Doc. 3, at 5–24. The Warden filed a Return of Writ, Doc. 6, and Berila filed a Traverse, Doc. 13.

### Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state

procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v.*

18

*Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for

20

instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**[5]

*1.    Ground two is not cognizable*

In ground two, Berila argues that his convictions were against the manifest weight of the evidence. Doc. 3, at 7. Berila's manifest weight claim is not cognizable on federal habeas review. *See Jaeger v. Wainwright*, No. 1:19-cv-2853, 2023 WL 6554265, at *22 (N.D. Ohio Sept. 1, 2023) ("It is well-

---

[5]    For convenience, I discuss Berila's first two grounds for relief out of numeric order.

established manifest weight of the evidence claims are not cognizable on federal habeas review") (citing and discussing cases), *report and recommendation adopted*, 2023 WL 6282944 (N.D. Ohio Sept. 27, 2023).

Nevertheless, Berila presented to the Ohio court of appeals a manifest weight claim together with a sufficiency of the evidence claim. *See Berila*, 2023 WL 6554265, at *3 ("Sufficiency and manifest weight are two separate, legally distinct arguments, and Mr. Berila indeed argues them separately in his merit brief," but "the core paragraphs containing his arguments under both assignments of error are identical—word-for-word."). The Ohio court of appeals considered these two claims together. *Id*. So to the extent that the Court construes Berila's manifest weight claim as a sufficiency of the evidence claim, *see Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007), Berila's manifest weight claim fails on the merits for the same reason, described below, that Berila's sufficiency of the evidence claim fails.

2.    *Ground one fails on the merits*

In ground one, Berila argues that the evidence was insufficient to support the jury's guilty verdicts. Doc. 3, at 5.

When reviewing a claim that a petitioner's conviction is not supported by sufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

The court defers to the trier-of-fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not whether the trier-of-fact made the correct guilt-or-innocence determination, but whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). The court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012). So even if this Court were to conclude that a rational trier-of-fact could not have found Berila guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio court of appeals recited the correct sufficiency standard that it applied to Berila's claim. *Berila*, 2020 WL 3542182, at *3 ("The relevant

23

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt") (internal quotation marks and citation omitted). The court explained:

> {¶17} Mr. Berila was convicted of one count of GSI under R.C. 2907.05(A)(4), which states: "No person shall have sexual contact with another, not the spouse of the offender [or] cause another, not the spouse of the offender, to have sexual contact with the offender [when the] other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." "Sexual contact" includes "any touching of an erogenous zone of another, including without limitation the * * * genitals, * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). He was also convicted of six counts of rape under R.C. 2907.02(A)(1)(b), which states: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" includes (1) vaginal intercourse between a male and female and (2) fellatio between persons regardless of sex. R.C. 2907.01(A). Finally, Mr. Berila was convicted of twenty-four counts of rape under R.C. 2907.02(A)(2), which states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and

circumstances of the case." *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 85 (9th Dist.1996).

{¶18} For the rapes that occurred while J.S. was still a minor, "'[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" *State v. Dasen*, 9th Dist. Summit No. 28172, 2017-Ohio-5556, ¶ 26, quoting *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1988). There also exists a coercion inherent in parental authority when a father sexually abuses his child. *Id.*, citing *Eskridge* at 58.

> "Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose."

*Id.*, quoting *Eskridge* at 59.

{¶19} Mr. Berila has not identified which portions of his identical arguments in these two assignments of error relate to sufficiency and which relate to manifest weight. *See State v. Hull*, 9th Dist. Wayne No. 14AP0025, 2015-Ohio-4001, ¶ 21; *State v. Bryant*, 9th Dist. Medina No. 1950, 1991 WL 57234, *3 (Apr. 10, 1991). Apart from bookending his arguments under his first assignment of error with vague, blanket statements of "there was insufficient evidence to support the jury verdicts of guilty" and "[t]he evidence presented at trial was insufficient for the jury to find Appellant guilty[,]" this Court can discern no specific argument attacking the State's evidence in support of certain elements of his crimes.

25

*See State v. Benford*, 9th Dist. Summit No. 25298, 2011-Ohio-564, ¶ 25; App.R. 16(A)(7). The only portion of his argument that even remotely relates to sufficiency is his statement that, beyond the testimony of J.S., there was "no physical evidence that rape or [GSI] took place." J.S. testified in graphic detail that her step-father, Mr. Berila, sexually abused her often on countless occasions over the course of a decade, and the testimony of the victim in sex offense cases, if believed, is sufficient to support a conviction, even without further corroboration. *See State v. Martucci*, 9th Dist. Summit No. 28888, 2018-Ohio-3471, ¶ 16. Moreover, "[t]he lack of physical evidence in a case where such evidence was unlikely due to the passage of time does not detract from the victim's testimony." *State v. Morris*, 9th Dist. Medina No. 09CA0022-M, 2012-Ohio-6151, ¶ 63 (Carr, J., dissenting).

{¶20} J.S. testified that when she was eleven years old Mr. Berila called her into the bathroom while he was taking a bath and then forced her to grab his penis. Her testimony, if believed, was sufficient to cause a reasonable jury to conclude that all the elements of GSI were proven beyond a reasonable doubt, as Mr. Berila forced his step-daughter, not his spouse, to have sexual contact with him by grabbing his penis when she was less than thirteen years old. *See* R.C. 2907.05(A)(4); R.C. 2907.01(B). The jury could infer from the type, nature, and circumstances of the contact that the touching of Mr. Berila's genitals was for the purpose of sexual arousal or gratification. *State v. Pistawka*, 9th Dist. Summit No. 27828, 2016-Ohio-1523, ¶ 16.

{¶21} After the bathroom incident, but while she was still less than thirteen years old, J.S. testified that Mr. Berila began making her give him "hand jobs" and "blow jobs" frequently. She provided specific details of the sexual abuse, such as Mr. Berila would always ejaculate onto his own stomach, never in her mouth. She also recalled that the incidents almost always occurred on Mr. Berila's bed and while her mother was at work. Her testimony was sufficient to

cause a reasonable jury to conclude that all the elements of rape were proven beyond a reasonable doubt, as Mr. Berila engaged in sexual conduct, i.e., fellatio, with his step-daughter, not his spouse, when she was less than thirteen years old. *See* R.C. 2907.02(A)(1)(b); R.C. 2907.01(A).

{¶22} J.S. further testified that Mr. Berila began forcing her to engage in vaginal intercourse once she turned sixteen years old. She sometimes struggled and cried to no avail when he forced himself on her, as he was much stronger and would hold her arms down. She recalled that the vaginal intercourse would always occur in the same position, with her lying on her back and Mr. Berila on top of her. She also testified that Mr. Berila showed her his gun and said he would kill them all if she told anyone. The sexual abuse became so routine for J.S. that she testified she would sometimes just take off her clothes and wait for Mr. Berila when he told her to go to his room, knowing it was going to happen no matter what. Finally, she testified that Mr. Berila impregnated her when she was nineteen years old, and her parents then made her get an abortion. J.S.' testimony was sufficient to cause a reasonable jury to conclude that all the elements of rape were proven beyond a reasonable doubt, as Mr. Berila purposely compelled her to submit to sexual conduct, i.e., vaginal intercourse, by force or threat of force. *See* R.C. 2907.02(A)(2); R.C. 2907.01(A).

{¶23} This Court will not undertake a more extensive sufficiency analysis when Mr. Berila has not done so himself. *See Powell*, 2014-Ohio-63, at ¶ 20; App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out."). Accordingly, upon review of the evidence presented in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence, if believed, to establish that Mr. Berila committed the offenses of GSI and rape. A reasonable jury could have determined that the

State proved each and every element of all thirty-one counts beyond a reasonable doubt.

{¶24} Mr. Berila's remaining arguments appear to challenge the manifest weight of the evidence. He first challenges J.S.' credibility, arguing that when she was first hospitalized she did not disclose any allegations of sexual assault. It is not uncommon, however, for victims of abuse to delay their reporting. *Powell* at ¶ 17. Here, J.S. testified that when she was a young child Mr. Berila would tell her not to tell anyone about the incidents and she would simply obey her step-father. As she grew older, however, she did not tell anyone because Mr. Berila showed her his gun and told her he would kill them all if she told anyone. When she was first hospitalized, the evidence showed that Mr. Berila was a constant presence at the hospital. J.S.' mother recalled Mr. Berila being there "every possible second" for visiting hours. J.S.' stipulated medical records further revealed specific notes from both a doctor and a nurse that Mr. Berila talked over J.S. and took over the doctor's interview and had to be told not to lie in J.S.' bed with his arm around her. It would not be unreasonable to presume that J.S. neglected to inform hospital staff of Mr. Berila's sexual assaults in light of his overbearing and constant presence during her hospital stay. Mr. Berila also argues that J.S. did not recall revealing any sexual assault allegations during her second hospital stay. However, other evidence showed that J.S. did reveal the sexual assaults to hospital staff as well as her counselor, her boyfriend, and her grandmother.

{¶25} Mr. Berila further attempts to discredit J.S. by calling attention to evidence of her multiple hospitalizations, history of mental illness, suicide threats and attempts, use of marijuana, and association with drug dealers and drug users. But, J.S. testified as to frequent sexual assaults at the hands of her own step-father throughout an entire decade of her childhood, along with a pregnancy by her step-father and a forced abortion. Mental health

28

issues and other difficulties in life are not to be unexpected when one is subjected to years of repeated sexual assaults as a child. The jury was made fully aware of J.S.' issues, and was able to consider them when weighing her credibility.

{¶26} Mr. Berila also directs us to his testimony denying the allegations in this case. He notes that he admitted on the witness stand to being an overstrict disciplinarian, claimed he opposed J.S.' abortion, and would not allow J.S. to move back home after she left. He further entered into evidence some Father's Day cards he received from J.S. during the time period in which these crimes allegedly occurred. The weight to be given the evidence and the credibility of the witnesses, however, are primarily for the trier of the facts. *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28; *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. J.S.' testimony remained largely consistent over time, and the jury was permitted to believe her allegations of sexual abuse, as the finder of fact is free to believe all, part, or none of the testimony of each witness. *See State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. The jury was further able to believe all, part, or none of Mr. Berila's testimony. *See id*. The jury was able to view the prosecutor's grueling cross-examination of Mr. Berila, in which certain aspects of his testimony seemed to change over time or not make sense at all. The jury was best able to view all of the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Taylor*, 9th Dist. Summit No. 29058, 2019-Ohio-3253, ¶15. "This Court has consistently held that '[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *Id*., quoting *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶13.

{¶27} Upon review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, this Court determines that the jury, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Mr. Berila's convictions and a new trial. *See Otten*, 33 Ohio App.3d at 340. Mr. Berila has also not demonstrated that this is an exceptional case in which the evidence weighs heavily against the conviction. *See Thompkins*, 78 Ohio St.3d at 387.

{¶28} Accordingly, Mr. Berila's first and second assignments of error are both overruled.

*Berila*, 2020 WL 3542182, at *3–6.

Berila argues that the Ohio court of appeals "ignored conflicting testimon[y]" and "contradict[ory] statements made to the police." Doc. 3, at 5. He doesn't identify the testimony or statements that he claims the court of appeals ignored. To the extent that Berila means that the victim's testimony at trial and statements made to the police conflicted with Berila's own testimony at trial and statements to the police, a court evaluating a sufficiency of the evidence claim does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown*, 567 F.3d at 205. And the Sixth Circuit "has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966)).

30

In his Traverse, Berila questions why the victim didn't report the abuse to the police when it first occurred, when she was ten years old, or later, when she was abused as a teenager. Doc. 12, at 5–6. But as the Ohio court of appeals explained, "[i]t is not uncommon … for victims of abuse to delay their reporting." *Berila*, 2020 WL 3542182, at *5. Moreover, the victim testified that Berila, who had a gun, threatened to "kill [them] all if [she] told anybody." *Id*. at *1; Doc. 6-2, at, 552. The jury learned about the timeframe of the abuse and the victim's reports; it was free to draw its own conclusions. *See Cavazos*, 565 U.S. at 7 ("a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting *Jackson*, 443 U.S. at 326); *Brown*, 567 F.3d at 205. Berila wonders why "other witnesses," including medical professionals, "allowed [it] to go on once they knew." Doc. 12, at 5. But the sexual abuse had ended when the victim reported it to others. *Berila*, 2020 WL 3542182, at *2; *see* Doc. 6-2, at 536–40. The jury heard and resolved this evidence, too. *See Cavazos*, 565 U.S. at 7.

Finally, Berila argues that a different Ohio criminal statute that he was not charged with, Ohio Revised Code 2907.06(B), provides that for misdemeanor sexual imposition, "[n]o person shall be convicted of a violation … solely upon the victim's testimony unsupported by other evidence." Doc. 13, at 6. Berila submits that this standard for *misdemeanor* sexual imposition is

31

higher than the standard for *felony* gross sexual imposition and rape, of which he was convicted, and that the different standards amount to a "miscarriage of justice." *Id*. Berila's argument is improper because Berila only raised this claim in his Traverse, not in his petition. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2000) (claims raised for the first time in a traverse are improper). So the Court isn't required to consider this claim. *See id*. Second, a challenge to Ohio's statutory scheme for sex offences is a state law issue not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"). Finally, Berila didn't present this argument to the Ohio courts, so it is procedurally defaulted. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)). And as explained below in the discussion of ground four, Berila has not shown cause, prejudice, or actual innocence to excuse any procedural default, including for claims that appellate counsel failed to raise on direct appeal.

All told, Berila hasn't shown that the Ohio court of appeal's sufficiency determination was objectively unreasonable, *see Brown*, 567 F.3d at 204, so ground two fails on the merits.

32

3.     *Ground three is not cognizable*

In ground three, Berila alleges that the trial court erred when it sentenced him to consecutive prison terms. Doc. 3, at 8. He argues that the record did not support consecutive sentences. *Id*. He also contends that the trial court and prosecution "infer[r]ed that a max sentence would be imposed if the 8, 3, or 1[-]year deal was not taken and it proceeded to trial." *Id*. Doc. 6-2, at 230–32.

Sentencing errors are state-law issues that are not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67–68. A claim alleging a violation of Ohio Revised Code 2929.14(C)(4), which requires the trial court to make certain findings before imposing consecutive sentences, is not cognizable. *See, e.g., Thompson v. Bracy*, No. 1:19-cv-58, 2022 WL 676288, at *23 (N.D. Ohio Jan. 14, 2022) (claim that the trial court failed to make findings under Ohio Revised Code § 2929.14(C)(4) before imposing consecutive sentences rests on state law and is not cognizable), *report and recommendation adopted*, 2022 WL 911260 (N.D. Ohio Mar. 29, 2022).

A claim alleging a constitutional violation due to consecutive sentences is cognizable if the petitioner shows that the sentence exceeds the statutory range. *See, e.g., Croce v. Miller*, No. 1:15-cv-1758, 2017 WL 3394046, at *22 (N.D. Ohio July 12, 2017) (rejecting the petitioner's claim that consecutive sentences violated the petitioner's due process rights because there is no federal constitutional issue when a state sentence is within the state statutory

33

range) (collecting cases), *report and recommendation adopted*, 2017 WL 3382665 (N.D. Ohio Aug. 7, 2017). But Berila doesn't allege that the sentences he received—on each count and his total sentence—exceeded the state's statutory range. His assertion that he was offered, and declined, a plea deal under which he would have served less time, Doc. 3, at 8; Doc. 13, at 7, is accurate. *See* Doc. 6-2, at 230–32. But that doesn't describe a sentencing error.

In his Traverse, Berila argues, for the first time, that the trial court's sentence was vindictive because the court punished him for going to trial. Doc. 13, at 7–8. This argument is improper because Berila raised it for the first time in his Traverse. *See Tyler*, 416 F.3d at 504. Even if the Court liberally construes ground three to include a claim of vindictive sentencing for Berila's choice to go to trial, any such claim would be procedurally defaulted because Berila didn't raise it on direct appeal to the Ohio courts, as he was required to do. *See Buell*, 274 F.3d at 349. Finally, Berila's "realization of th[e] risk [of rejecting a plea offer] in the form of a harsher sentence—even a significantly harsher sentence—does not support his claim of vindictiveness. It reflects his poor choice."[6] *See Weaver v. Christiansen*, No. 1:19-cv-127, 2021 WL 6551240, at *18 (W.D. Mich. Feb. 10, 2021), *report and recommendation adopted*, 2021 WL 5710770 (W.D. Mich. Dec. 2, 2021).

---

[6]     The State's offer was that Berila would plead guilty to one count of rape and the State would dismiss the remaining 30 counts, the specifications, and "take … the potential life sentence off the table." Doc. 6-2, at 230–32.

4.      *A portion of ground four fails on the merits and the remainder is procedurally defaulted*

In ground four, Berila alleges ineffective assistance of trial and appellate counsel. Doc. 3, at 10. He argues that both counsel ignored evidence and witnesses, made "improper fil[]ings," and "fail[ed] to review before filing of motions and/or appeal." *Id*. Counsel "failed to work as directed" and didn't work at all "for long periods of time." *Id*. Also, Berila submits, appellate counsel let "a pre-law person work and likely file without review." *Id*.

4.1     *Berila's claim that trial counsel failed to obtain an expert witness fails on the merits*

Berila alleges that trial counsel was ineffective because he "ignore[ed] … witness." Doc. 3, at 10. Construing this statement liberally, Berila could be arguing that trial counsel was ineffective for failing to call an expert witness, which is an argument that he raised on direct appeal. Doc. 6-1, at 46–48.

A successful ineffective-assistance claim requires a petitioner to demonstrate that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Jones v. Bradshaw*, 46 F.4th 459, 487–88 (6th Cir. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first prong is satisfied when a petitioner 'show[s] that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Jones*, 46 F.4th at 487 (quoting *Strickland*, 466 U.S. at 694). "The second prong is satisfied when the petitioner 'show[s] that there is a reasonable probability that, but for counsel's

35

unprofessional errors, the result of the proceeding would have been different.'"
*Jones*, 46 F.4th at 487–88. "'A reasonable probability is a probability sufficient
to undermine confidence in the outcome.'" *Jones*, 46 F.4th at 488 (quoting
*Strickland*, 466 U.S. at 694). The combined effect of *Strickland* and 28 U.S.C.
§ 2254(d) is "'doubly deferential'" review. *Cullen v. Pinholster*, 563 U.S. 170,
190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "When
2254(d) applies, the question is not whether counsel's actions were reasonable,"
but "whether there is any reasonable argument that counsel satisfied
*Strickland's* deferential standard." *Harrington*, 562 U.S. at 105; *Foust v. Houk*,
655 F.3d 524, 533–34 (6th Cir. 2011).

    *Strickland* commands that a court "must indulge [the] strong
presumption" that counsel "made all significant decisions in the exercise of
reasonable professional judgment." 466 U.S. at 689–90; *Pinholster*, 563 U.S. at
196 ("[t]he Court of Appeals was required not simply to 'give [the] attorneys
the benefit of the doubt,' but to affirmatively entertain the range of possible
'reasons Pinholster's counsel may have had for proceeding as they did'")
(citation omitted).

    The Ohio court of appeals rejected Berila's claim on direct appeal:

> {¶36} In his fourth assignment of error, Mr. Berila
> argues that his trial counsel was ineffective in
> failing to retain a forensic psychologist as an expert
> witness on his behalf, which he claims "guaranteed
> his conviction in this case." We disagree.
>
> {¶37} "[I]n Ohio, a properly licensed attorney is
> presumed competent." *State v. Gondor*, 112 Ohio

St.3d 377, 2006-Ohio-6679, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Moreover, debatable trial tactics will not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶38} Mr. Berila argues that his counsel should have called a forensic psychologist as a witness at trial on his behalf, due to J.S.' history of mental health issues and hospitalizations. He notes that counsel presented no expert testimony at trial to rebut either J.S.' testimony or the contents of her medical records. As a general rule, trial counsel's decision not to call an expert witness will not establish ineffective assistance. *State v. Hanford*, 9th Dist. Summit No. 29204, 2019-Ohio-2987, ¶ 37. *See also State v. Coombs*, 9th Dist. Lorain No. 03CA008262, 2004-Ohio-441, ¶ 26 ("[T]he decision whether to call an expert witness is simply a matter of trial strategy."); *State v. Spaulding*, 9th Dist. Summit No. 28526, 2018-Ohio-3663, ¶ 52 ("[C]ounsel's decision to rely on cross-examination instead of calling an expert witness to testify is not ineffective assistance."). Moreover, when the trial record is silent regarding the substance of a potential expert's testimony, establishing prejudice under *Strickland*

37

requires proof outside of the record, and the claim is therefore not appropriately considered on direct appeal. *Hanford* at ¶ 37. Here, the record is silent as to what a forensic psychologist's testimony may have been regarding J.S.' mental health, so any arguments as to resulting prejudice are purely speculative. *See id*. We therefore find no merit in Mr. Berila's ineffective assistance of counsel argument.

{¶39} Mr. Berila's fourth assignment of error is overruled.

*Berila*, 2020 WL 3542182, at *8–9.

The Ohio court of appeals correctly applied the *Strickland* standard to Berila's ineffective assistance of counsel claim. *Berila*, 2020 WL 3542182, at *8. The court accurately stated that counsel's decision to rely on cross-examination, rather than an expert, did not constitute ineffectiveness. *Id.*; *see also Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015) ("The Supreme Court has never reached the specific question[] … [of] how hard" an attorney must try to obtain an expert); *see Dovala v. Baldauf*, No. 20-4222, 2021 WL 3732338, at *7 (6th Cir. Aug. 24, 2021) ("*Strickland* does not require a defense attorney to present an expert," and "the [Supreme] Court endorsed … an alternative to expert-testimony: cross-examination, 'the greatest legal engine ever invented for the discovery of truth'") (quoting *California v. Green*, 399 U.S. 149, 158 (1970)).

In his Traverse, Berila submits that his trial counsel "failed to schedule the appearance of five … expert witnesses for the defense." Doc. 13, at 10. Berila alleges that these five experts "would have testified on behalf of [Berila]

to counter the alleged evidence presented at trial." *Id*. Berila doesn't say who these purported experts are or explain what, precisely, they would have testified to. He cites *City of Middletown v. Allen*, 579 N.E.2d 254 (Ohio Ct. App. 1989), in support. Doc. 13, at 10. In *Allen*, the court found that the defendant's counsel was ineffective because counsel failed to subpoena trial witnesses who may have provided an alibi to the defendant, who was convicted of theft. 579 N.E.2d at 255–57. Here, Berila hasn't identified any witnesses that counsel failed to call, let alone ones who would have given Berila an alibi for the entire decade at issue in this case.

Berila hasn't shown that the Ohio court of appeals' decision "was contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). So this portion of ground four fails on the merits.

### 4.2    *Berila's remaining claims are procedurally defaulted*

Berila's remaining ineffective assistance of trial counsel claims—in which Berila complains about counsel's motions, delays, alleged improper filings, and that counsel ignored evidence[7]—are procedurally defaulted. This is so because Berila failed to raise them on direct appeal as he was required to

---

[7]    Berila doesn't identify the motions and filings he objects to. He doesn't identify any delays. And he doesn't describe the evidence that trial counsel allegedly ignored. So on that basis alone, these claims should be dismissed, as the Warden argues, Doc. 6, at 38. *See* Rule 2(c)(2) of the Rules Governing Section 2254 Cases (the petition must "state the facts supporting each ground").

do, to the extent that these claims are based on the trial court record.[8] *See Greer v. Mitchell*, 264 F.3d 663, 674 (6th Cir. 2001) (citing *State v. Cole*, 443 N.E.2d 169 (1982)). Berila contends that he presented these claims on direct appeal. Doc. 13, at 3. But his briefs on appeal to the Ohio courts belie his assertion. *See* Doc. 6-1, at 46–48 (brief to Ohio court of appeals arguing only that counsel was ineffective for not obtaining an expert witness); *see also* Doc. 6-1, at 117–18 (brief to the Ohio Supreme Court arguing that counsel was ineffective for not obtaining an expert witness and in connection with Berila's "foreclosure case").

Berila hasn't alleged cause to excuse the procedural default. Ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted and the court finds that appellate counsel was constitutionally ineffective. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53

---

[8]  To the extent that any of these claims are *not* based on the trial court record, they are procedurally defaulted because Berila didn't file a post-conviction petition, *see Greer*, 264 F.3d at 674–75, the time to do so has passed, *see* Ohio Rev. Code § 2953.21(A)(2)(a) (a post-conviction petition must be filed in the trial court 365 days after the transcript is filed on direct appeal), and Berila hasn't shown that he meets any of the requirements in Ohio Revised Code § 2953.23(A)(1) for filing a late petition. *See, e.g., Buckley v. Ohio*, No. 5:19-cv-424, 2020 WL 5603768, at *8 (N.D. Ohio Aug. 18, 2020) (finding that a claim was futile and therefore procedurally defaulted when the petitioner hadn't filed a post-conviction petition to assert the claim, the time to file a post-conviction petition had passed, and the petitioner hadn't met any of the requirements in Ohio Revised Code § 2953.23(A)(1) for filing a late petition) (collecting cases), *report and recommendation adopted*, 2020 WL 5593099 (N.D. Ohio Sept. 18, 2020).

(2000). Here, Berila procedurally defaulted his ineffective assistance of appellate counsel claims for two reasons. First, the Ohio court of appeals rejected Berila's Ohio Appellate Rule 26(B) Application to Reopen as untimely.[9] *See Parker v. Bagley*, 543 F.3d 859, 861–62 (6th Cir. 2008) (claims raised in a Rule 26(B) Application that the Ohio court of appeals rejected as untimely are procedurally defaulted). Second, Berila didn't cite appellate counsel's failure to raise trial counsel's alleged delays and improper filings as reasons that appellate counsel was ineffective. *See* Doc. 6-1, at 174–76.

Berila hasn't shown cause to excuse the procedural default of his ineffective assistance of appellate counsel claims. He argues that his Rule 26(B) Application wasn't untimely because the Governor of Ohio issued an executive order tolling state court deadlines from March 9 to July 30, 2020, due to the coronavirus pandemic. Doc. 13, at 3; *see In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Ct. & Use of Tech.*, 158 Ohio St. 3d 1447 (Ohio Sup. Ct. March 27, 2020). But Berila didn't make this argument to the Ohio court of appeals when he filed his late application. Instead, Berila argued that his application was late because he

---

[9]     Rule 26(B)(1) provides:

A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

sent it to the wrong court. Doc. 6-1, at 163. Moreover, the tolling order doesn't save Berila's late application. As the Ohio court of appeals later stated when it denied Berila's untimely motion for reconsideration, the tolling order only applied to deadlines set to expire *during the term of the order*—between March and July 2020—not deadlines set to expire afterwards. Doc. 6-1, at 232. Because Berila's Rule 26(B) Application was due in September 2020, the tolling provision didn't apply. *Id.*; *see also Saalim v. Walmart, Inc.*, No. 3:21-cv-1481, 2023 WL 2043339, at *6 (N.D. Ohio Feb. 16, 2023) ("Ohio courts have interpreted [Ohio's coronavirus] tolling measures as tolling actions which would have *expired* between March 9 and July 30, 2020") (emphasis added); *Johnson v. Ohio Dep't of Rehab. & Corr.*, No. 22AP-61, 2022 WL 2286218, at *2 (Ohio Ct. App. June 23, 2022) ("the tolling legislation tolled deadlines between March 9 and July 30, 2020, but had no effect on time requirements which expired after July 30, 2020"); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Finally, Berila has not shown "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial' without addressing the alleged constitutional error." *See Mack v. Bradshaw*, No. 22-3201, -- F.4th --, 2023 WL 8734865, at *8 (6th Cir. Dec. 19, 2023) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

In sum, Berila hasn't shown that he can overcome the procedural default of his ineffective assistance of trial counsel claims. And for the same reasons, Berila's ineffective assistance of appellate counsel claims are also procedurally defaulted.

### 5.    *Ground five is procedurally defaulted*

In ground five, Berila argues that trial counsel was ineffective for failing to investigate the "petit jury array." Doc. 3, at 12. He explains that when the jury was first brought into the courtroom, the "vast majority of the jury pool were females." *Id*. He states that "[t]his was the second pool after the first pool was a majority of males, [and] was dismissed at the request of the prosecution." *Id*. Berila submits that his trial counsel was "obligated to make an investigation into what the jury pool will consist of when it comes to a fair representation" in the community and that counsel's failure to do so resulted in an unfair trial. *Id*.

Ground five is procedurally defaulted because Berila failed to raise this claim on direct review, as he was required to do. *See Buell*, 274 F.3d at 349. And he hasn't shown cause to overcome the procedural default. "The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). A petitioner who makes a prima facie case of a fair-cross-section claim establishes cause to excuse a procedural default.

*Ambrose v. Booker*, 684 F.3d 638, 645–49 (6th Cir. 2012); *see Parks v. Chapman*, 815 F. App'x 937, 944 (6th Cir. 2020). To establish a prima facie fair-cross-section claim, Berila must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of the group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Berghuis*, 559 U.S. at 319 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Berila satisfies the first element of a prima facie case but provides no allegations, argument, or evidence as to the remaining two elements. So he hasn't alleged a prima facie fair-cross-section claim to excuse the procedural default of ground five.

Berila also hasn't shown actual prejudice—that under *Strickland* the outcome at trial would have been different. *See Ambrose*, 684 F.3d at 649–50; *Parks*, 815 F. App'x at 944–45. In fact, nothing in the record supports Berila's assertion that there was another jury pool that the prosecution dismissed. *See* Doc. 6-2, at 1–225. And review of the record shows that counsel questioned 16 men and 17 women from the jury pool, *id.*; each side used peremptory challenges to excuse two women and two men, *id.* at 15, 34, 39, 60, 79, 86, 98, 114, 222–23; and five men and seven women served on the jury, *id.* at 33, 37,

44

70, 72, 76, 82–83, 90, 92, 94, 96, 101, 107, 224–25, 1470.[10] So Berila's assertion that male jurors were "not represented," Doc. 3, at 13, is belied by the record.

### 6.   Most of ground six is procedurally defaulted and the remainder fails on the merits

In ground six, Berila argues that the trial court violated his right to counsel because the trial court "told the defense counsel to hurry up," "cut short … closing arguments," and "often berated defense counsel in front of the jury." Doc. 3, at 14–15. Berila also asserts that the trial court "told the jury they were staying until they came to a[] unanimous decision … the morning following the jury's late deliberations that ended in a 9 to 3 hung vote." *Id*. at 14. Berila complains that "there was an active separation of witnesses, but the trial judge declined the objection of two of the State[']s primary witness talking during a recess which was after one witness testified and before the other." *Id*. There was a conflict of interest, Berila asserts, because defense counsel and the judge handled Berila's foreclosure case. *Id*. at 15. And the trial court erred when it "refused objections by the defense when two jurors informed the judge that they … knew" who the victim's mother was and didn't excuse other jurors for various reasons. *Id*. Finally, Berila argues that the judge "let her opinion and beliefs on abortion affect her sentencing, and admonished the defense counsel with the same beliefs at sentencing." *Id*.

---

[10]    The transcript shows that juror number 18, a woman, was excused during trial and that a female alternate took her place. Doc. 6-2, at 1470.

### 6.1     All but one of Berila's claims are procedurally defaulted

With the exception Berila's claim about the judge's comments at sentencing, all of the claims in ground six are procedurally defaulted because they are based on the record and Berila should have, but did not, raise them on direct review. *See Buell*, 274 F.3d at 349. As explained above, he hasn't shown cause to excuse the procedural default or actual innocence.

Moreover, Berila doesn't provide citations to the record for the trial court's purportedly injurious comments and acts. "It is not the role of the district court to scour the petitioner's trial transcript to find support for the arguments in his habeas corpus petition." *Wenglikowski v. Jones*, 306 F. Supp. 2d 688, 695 (E.D. Mich. 2004), *aff'd in part on other grounds*, 162 F. App'x 582 (6th Cir. 2006). Nevertheless, the transcript doesn't support Berila's claim that the trial court "told the jury they were staying until they came to a[] unanimous decision [on] the morning following the jury's late deliberations that ended in a 9 to 3 hung vote." Doc. 3, at 14. Rather, the transcript shows only that the jury asked to break for the day at 7:25 in the evening; reconvened the next morning without further instruction; and came to a unanimous verdict that afternoon. Doc. 6-2, at 1475–77.

As for Berila's assertion that the trial court "cut short the defense counsel[']s closing arguments to the jury so the prosecution could present its rebuttal," Doc. 3, at 14, the transcript shows only that the trial court summarily sustained the prosecutor's objections at the end of defense counsel's

closing argument. *See* Doc. 6-2, at 1404–05. And Berila's argument that the trial court "refused objections by the defense" when two jurors informed the judge that they visited the victim's mother's workplace, Doc. 3, at 13, is also belied by the record. The transcript shows that the judge asked counsel for both sides if they wished to question a juror who had seen at a gym one of the state's witnesses and a juror who stated that he had visited the victim's mother's place of employment. Doc. 6-2, at 804–05. Neither counsel wanted to question the first juror and defense counsel questioned the second juror. *Id*. at 805, 807–10. After counsel's questions, the judge asked counsel if he wanted to dismiss that juror and counsel said "no." *Id*. at 810.

### 6.2    *Berila's claim of judicial bias fails on the merits*

Berila claims that the trial judge "ignored evidence" and "levied a much harsher sentence," compared to what the State offered in a plea deal, due to the judge's "opinion and beliefs on abortion." Doc. 3, at 15. Berila also argues that the judge "admonished" counsel with those beliefs at trial. *Id*. To the extent that this claim alleges that the judge's sentence was vindictive vis-à-vis the plea offer that Berila rejected, it fails for the same reason discussed in ground three—it is procedurally defaulted and meritless.

To the extent that Berila argues that the trial judge "ignored evidence," Doc. 3, at 15, Berila doesn't identify what evidence he believes that that the judge ignored. So this claim fails. *See Wenglikowski*, 306 F. Supp. 2d at 695

("the petitioner's failure to isolate specific portions of the transcript indicating the trial judge's alleged bias is fatal to his claim.").

Finally, Berila's claim that the judge "admonished" Berila's counsel "with the [judge's purported beliefs about abortion] at sentencing," Doc. 3, at 15, fails on the merits. Berila alleged on direct appeal to the Ohio court of appeals that the judge "admonished" Berila's counsel at the sentencing hearing, which, Berila said, demonstrated bias. Doc. 6-1, at 44. To the extent that the judge could have been said to have *admonished* Berila's counsel, this exchange occurred when counsel was discussing the sentencing factors. Doc. 6-2, at 1498. Counsel stated that "there was no evidence presented at trial … of any physical harm or expected physical harm to the victim." *Id*. The judge expressed disbelief at counsel's suggestion that that there was no physical harm to the victim. *Id*. The judge's comment was an accurate response, since a jury had found Berila guilty of 30 counts of raping his step-daughter over an entire decade, including when the victim was a child. Berila hasn't shown that this comment indicated that the judge was biased.

The judge's next comment—that the victim had an abortion—doesn't change this conclusion, since evidence at trial showed that the victim had an abortion and testified that Berila had impregnated her and that Berila and the victim's mother forced her to have an abortion. Doc. 6-2, at 510–17, 814–15; *see also Berila*, 2020 WL 3542182, at *5. Moreover, when the judge announced Berila's sentence on the 30 counts of rape, she cited the following facts: the

48

victim suffered serious physical and psychological harm; the injury to the victim was exacerbated by the victim's youth; Berila's familial relationship with the victim facilitated the offense; and Berila showed no genuine remorse. Doc. 6-2, at 1500. Berila hasn't shown that the judge's comments in response to defense counsel's assertion that the victim suffered no physical harm indicated that the judge held "a deep-seated favoritism or antagonism that would make fair judgment impossible." *See Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002) (explaining what constitutes a rare, viable claim of constitutionally impermissible judicial bias) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

### 7.  *Most of the allegations in ground seven are duplicative, and the only new claim is procedurally defaulted*

In ground seven, Berila recites a variety of claims, most of which are duplicative of claims elsewhere in his petition. Doc. 3, at 16–17. To start, he says that his "ineffective assistance of counsel rights were violated … due to jury misconduct and errors." *Id*. at 16. To the extent that any or all of the claims in ground seven are intended to be ineffective assistance of counsel claims, they are procedurally defaulted, as explained in the discussion about ground four.

In the supporting facts section of ground seven, Berila reiterates his allegations about the jury's deliberations, *id*. at 17, which he asserted in ground six, *id*. at 14. For the same reasons explained in the discussion about ground six, this claim is procedurally defaulted and belied by the transcript, which does not support Berila's description of events. *See* Doc. 6-2, at 1475–77.

49

So, too, with respect to the claim about the two jurors who notified the court that they had seen two of the state's witnesses outside the courtroom. *See* Doc. 3, at 15 (ground six), 16 (ground seven). Berila's claim that men were not fairly represented in the jury pool, *id*. at 17, is the same claim that Berila raised in ground five, *id*. at 12, and it is procedurally defaulted for the same reason.

Berila asserts that "the jury had requested to have questions answered while in deliberations. The jury accepted answers from both the judge and prosecution without the defense present at all." Doc. 3, at 16–17. Berila doesn't cite the transcript pages showing that this event occurred. The transcript shows that the jury began deliberating and then asked to break for the day at 7:25 in the evening. Doc. 6-1, at 1474–75. The court could not reach Berila's counsel and could not find Berila. *Id*. at 1475. The court brought the jurors back into the courtroom, excused them for the evening, and instructed them not to discuss the case. *Id*. at 1475–76. The jury asked no questions and neither the judge nor the prosecution offered unsolicited answers. In any event, this claim is procedurally defaulted because Berila didn't raise it on direct appeal. *See Buell*, 274 F.3d at 349.

### 8.    *Ground eight is procedurally defaulted*

In ground eight, Berila argues that his due process and "effective assistance of counsel rights" were violated due to prosecutorial misconduct and errors. Doc. 3, at 19. Berila lists six instances of procedural misconduct. *Id*. at 18–19. The list includes the prosecution answering questions from the jury

50

during deliberations, *id*. at 19, which is the same claim Berila raised in ground seven, *id*. at 16–17, and which is addressed above. Berila also argues that the prosecution "allowed a State's witness to give perjured testimony that conflicted with the witness['s] own sworn testimony/statements to police." *Id*. at 19. In his Traverse, Berila identifies the witness at issue as the victim "and other state witnesses." Doc. 13, at 14. Berila's failure to identify the statements that he challenges and the identity of any witness other than the victim is fatal to this claim. *See Wenglikowski*, 306 F. Supp. 2d at 695; *see also Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[l]iberal construction [of a pro se habeas petition] does not require a court to conjure allegations on a litigant's behalf") (quoting *Erwin v. Edwards*, 22 F.App'x 579, 580 (6th Cir. 2001)).

To the extent that ground eight is intended to be an ineffective assistance of counsel claim, it is procedurally defaulted for the reasons explained in ground four.

Berila's other allegations listed under ground eight concern Berila's claim that the prosecution withheld evidence. Doc. 3, at 18–19. Berila identifies the withheld evidence as "[Bureau of Criminal Investigation] reports, digital files, drives and all items relevantly used by B.C.I. from the search warrant." *Id*. at 19. This includes 30,000 photos that were on Berila's computer and which, Berila alleges, "defense counsel could have used to disprove or argue many of the Prosecution's case." *Id*. at 18.

The Ohio court of appeals considered this claim as follows:

{¶40} In his fifth assignment of error, Mr. Berila argues that the prosecutor committed prosecutorial misconduct by withholding exculpatory evidence— i.e., 30,000 pictures confiscated from his home— which denied him a fair trial and constituted plain error. We disagree.

{¶41} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced." *State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 22. "'[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial.'" *Id.*, quoting *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6. The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him. *Id.* "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶42} If the State withholds material, exculpatory evidence, it offends a criminal defendant's due process rights. *State v. Charlton*, 9th Dist. Lorain No. 12CA010206, 2014-Ohio-1330, ¶32, citing *Brady v. Maryland*, 373 U.S. 83 (1963). "'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 31, quoting *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). "It is [the] [d]efendant's burden to establish that the evidence is both favorable and material and that there is reasonable probability that the outcome would have been different if the evidence had been provided."

*State v. Whalen*, 9th Dist. Lorain No. 08CA009317, 2008-Ohio-6739, ¶ 8.

{¶43} Mr. Berila never objected to any alleged prosecutorial misconduct at the trial court level and is therefore limited to arguing plain error on appeal. *See State v. Warrington*, 9th Dist. Medina No. 14CA0080-M, 2016-Ohio-244, ¶ 13. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "To establish plain error, one must show (1) an error occurred, i.e., a deviation from a legal rule, (2) the error is plain, i.e., an obvious defect in the proceedings, and (3) the error affected a substantial right, i.e., affected the outcome of the proceedings." *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 5, citing *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶36. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶44} In executing a search warrant on Mr. Berila's home, the police seized approximately 30,000 pictures. During cross-examination, the prosecutor asked Mr. Berila if he ever received Officer Thompson's message to come pick up his property, and Mr. Berila said he had not. Mr. Berila now claims that these pictures were exculpatory in nature, but he only states that they "[show him] with J.S. at family gatherings and vacations * * *." He neglects to explain how these pictures are in any way exculpatory, i.e., they are favorable to him and would have led to an acquittal. *See Whalen* at ¶ 8 (defining "exculpatory evidence" as evidence favorable to the accused which, if disclosed and used effectively, may make the difference between conviction and acquittal). Mr. Berila has also failed to demonstrate how any of these pictures were suppressed by the prosecutor. *See Jalowiec*, at ¶ 31 (requiring the evidence to be suppressed by the prosecutor for a *Brady* violation). The pictures were

seized from Mr. Berila's home, and he, in turn, knew they existed and even described what they depicted; we therefore cannot say that the pictures were suppressed by the State in violation of *Brady. See, e.g., State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, ¶ 53-54. The record further reveals that the police actively reached out to Mr. Berila to return his pictures to him. Mr. Berila simply failed to respond. He has failed to demonstrate any improper conduct on the part of the prosecutor denying him a fair trial. *See Moreland* at ¶ 22. Because Mr. Berila has failed to show any error, let alone plain error, his argument must fail.

{¶45} Mr. Berila's fifth assignment of error is overruled.

*Berila*, 2020 WL 3542182, at *9–10.

Because the Ohio court of appeals applied plain error review to Berila's claim, the claim is procedurally defaulted. Ohio's long-standing contemporaneous objection rule requires a party to make a contemporaneous objection to an alleged trial error to preserve the error for appellate review. *See, e.g., State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001). When an Ohio court applies plain error review, it enforces an independent and adequate state ground that precludes federal habeas review. *Scott v. Mitchell*, 209 F.3d 854, 866–71 (6th Cir. 2000). And the state court's plain error review "does not constitute a waiver of the state's procedural default rules and resurrect the issue." *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)). Because the Ohio court of appeals applied plain error review to Berila's prosecutorial misconduct claim, it is procedurally defaulted.

54

Berila doesn't allege cause to excuse the procedural default. Ineffective assistance of counsel—trial counsel, for failing to object, and appellate counsel, for failing to raise an ineffective assistance of trial counsel claim for failing to object—could not serve as cause to excuse the procedural default because Berila procedurally defaulted any such ineffective assistance of counsel claims, as explained above in the discussion about ground four. And Berila hasn't identified any of the evidence that he alleges was suppressed—evidence that belonged to him and that he knew about—that would show actual innocence to overcome the procedural bar.

### 9. *Most of the claims in ground nine are procedurally defaulted and the remainder fail on the merits*

In ground nine, Berila lists 22 reasons for why he believes trial counsel and appellate counsel were ineffective. Doc. 3, at 20–24.

For trial counsel, Berila complains that the first attorney he hired "dropped [Berila] when [Berila] was arrested after the indictment" because the attorney's family member took a job with the prosecutor's office. Doc. 3, at 20. This doesn't describe a constitutional violation. Berila next argues that trial counsel "dismissed a male heavy jury pool" and didn't hire an expert witness. *Id*. at 21. These allegations were discussed above, in grounds four and five.

Berila argues that trial counsel didn't advise Berila that he had a right to claim indigence, which, Berila alleges, would have freed up money to pay expert witnesses. Doc. 3, at 21. And Berila complains that his attorney didn't use Berila's neighbors as witnesses or obtain Berila's medical records showing

that Berila had multiple sclerosis. *Id*. These claims are procedurally defaulted, because Berila didn't raise them on direct appeal, and he procedurally defaulted any ineffective assistance of appellate counsel claims that could have excused the procedural default. Berila says that he doesn't like the way his attorney handled the foreclosure proceedings on his house, *id*. at 21–22, but doesn't explain how that effected counsel's performance during Berila's criminal trial.

Berila asserts that trial counsel didn't object when the trial judge "rushed" him, "verbal[ly] harass[ed] him," and "rebuke[d]" him due to the judge's purported bias about abortion. Doc. 3, at 22. These allegations are not supported by the record, as described above in ground six, and the claims that the judge rushed or verbally harassed defense counsel are also procedurally defaulted, as discussed in ground six.

Berila's claim that trial counsel "refused to challenge the State's witnesses" is belied by the transcript, which shows that defense counsel cross-examined all of the State's witnesses. *See* Doc. 6-2, at 3, 298, 372, 571, 746, 774. Any other complaints that Berila has about his counsel's performance while cross-examining witnesses fails because Berila hasn't identified the portions of the transcript that he finds objectionable. *See Wenglikowski*, 306 F. Supp. 2d at 695.

Next, Berila lists his complaints about appellate counsel. He asserts that appellate counsel didn't adequately consult with him before filing his

56

appellate brief, requested extensions of time (that the court granted), didn't use the "B.C.I. reports or the files on the drives," and failed to obtain medical records from the prison purporting to show that Berila was diagnosed with multiple sclerosis. Doc. 3, at 22–23. All of these claims are procedurally defaulted because, as described in ground four, the Ohio court of appeals denied Berila's Rule 26(B) Application to reopen as untimely. *See Parker*, 543 F.3d at 861–62 (claims raised in a Rule 26(B) Application that the Ohio court of appeals rejected as untimely are procedurally defaulted). And Berila hasn't shown cause to excuse the procedural default.

In his Traverse, Berila submits that while any one of his ineffective assistance of counsel claims may not, alone, constitute error, "the multiple errors in total accumulate to a massive ineffective assistance of trial and appellate counsel." Doc. 13, at 19. Setting aside the problem that Berila improperly raised this argument for the first time in his Traverse, "cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue." *Williams*, 460 F.3d 789, 816 (6th Cir. 2006).

For all these reasons, the claims that Berila raised in ground nine are procedurally defaulted or fail on the merits.

**Conclusion**

For the reasons set forth above, I recommend that Berila's Petition be denied.

Dated: January 3, 2024

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).